IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MOHAMED S ALI, et al,                         No   C-04-4140 VRW

      Plaintiffs,                                ORDER

      v

WHITE CAP INDUSTRIES, INC, et al,

      Defendants.
_____/

         On September 29, 2004, plaintiffs Mohamed S Ali ("Ali"), and Abraham Morales ("Morales") sued their employer, White Cap Industries, Inc ("White Cap") on various California wage and hour claims. Doc #1. Ali also sued both White Cap and Ali's supervisors, Arturo Rodriguez ("Rodriguez") and Hugo Fabbri ("Fabbri") for, inter alia, national origin, religion and race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 USC § 1981 ("§ 1981") and the California Fair Employment and Housing Act ("FEHA"). Id. Plaintiffs amended their complaint on March 15, 2005, to include a new plaintiff, Malcolm Parks ("Parks"), who joined in the California wage and hour claims. Doc #14.

On July 5, 2005, defendants filed a notice of substitution of counsel with the court. Doc #22. On October 21, 2005, the court entered a stipulation in which plaintiffs settled their California wage and hour claims with defendants under FRCP 68. Doc #42. Accordingly, Morales and Parks are no longer part of this litigation and only Ali's discrimination-related claims remain.

When Ali began working at White Cap, he signed an arbitration agreement, which is at the heart of the present motion. Arb Agreement (Doc #30, Ex A). Defendants moved to compel arbitration and requested a stay on August 16, 2005. Mot Arb (Doc #29). On November 10, 2005, the court held a hearing on this matter. For the reasons stated below, the court GRANTS defendants' motion to compel arbitration and their request for a stay.

I

In 1925, Congress enacted the Federal Arbitration Act (FAA) to "reverse the longstanding judicial hostility to arbitration agreements," to "place [such] agreements on the same footing as other contracts" and to "manifest a liberal federal policy favoring arbitration agreements." EEOC Comm'n v Waffle House, Inc, 534 US 279, 288-89 (2002). The FAA "embodies a clear federal policy in favor of arbitration," and "'[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" Simula, Inc v Autoliv, Inc, 175 F3d 716, 719 (9th Cir 1999) (quoting Moses H Cone Memorial Hospital v Mercury Construction Corp, 460 US 1, 24-25 (1983)).

//

"The standard for demonstrating arbitrability is not high," and a district court has no discretion to hear suits that are subject to arbitration. Id (citing <u>Dean Witter Reynolds v Byrd</u>, 470 US 213, 218 (1985)). Provided that the court is satisfied that the making of the arbitration agreement is not at issue, the court must order arbitration pursuant to § 4 of the FAA. Id at 719-20. Hence, when faced with requests regarding arbitration, the court's sole duties are to determine whether an arbitration agreement exists and rigorously to enforce the terms of that agreement. Id at 720. Further, if arbitration is necessary under such an agreement, "the court shall, on the motion of one of the parties, stay its proceedings until 'arbitration has been had in accordance with the terms of the agreement.'" <u>HIM Portland, LLC v DeVito Builders, Inc</u>, 317 F3d 41, 43 (1st Cir 2003) (quoting 9 USC § 3).

II

As a preliminary matter, the court notes that Ali's claims appear to fall directly within the scope of the arbitration agreement. The first provision of that agreement states in relevant part:

> Any and all claims, controversies, grievances, differences, injuries or disputes arising out of or in any way related to Employee's employment with the Company, including but not limited to demotions, promotions, transfers, assignments and disciplinary action, up to and including termination of Employee's employment, claims for breach of contract; wrongful termination; constructive termination; age, sex, race or other unlawful discrimination or harassment; defamation; emotional distress; and violation of public policy, must be submitted to final and binding arbitration * * *. Such arbitrable

3

> disputes which must be submitted to arbitration under this Agreement include, but are not limited to, discrimination claims arising under state and federal anti-discrimination laws (such as Title VII of the Civil Rights Act * * * the California Fair Employment and Housing Act, and the United States and California Constitution).

Arb Agreement at ¶ 1. Ali's currently pending claims are based on harassment and discrimination in violation of Title VII, § 1981 and FEHA; breach of the implied covenant of good faith and fair dealing; tortious discharge in violation of public policy and intentional and negligent infliction of emotional distress. Doc #14. Not only does the first provision's broad language encompass these claims, but most of the claims are explicitly enumerated within the provision itself. And Ali does not dispute that these types of claims are generally subject to arbitration.

Nonetheless, Ali has challenged the present motion to compel on several grounds. Ali asserts that he is entitled to a jury trial concerning the validity of the arbitration agreement and that the arbitration agreement is unenforceable because it is unconscionable. Opp (Doc #38) at 10-14. Ali also claims that defendants waived their arbitration rights both by failing to follow the procedures set forth in the arbitration agreement and by delaying in filing a motion to compel. Id at 6-9. Finally, Ali contends that his claims against Fabbri and Rodriguez cannot be arbitrated because these defendants were not parties to the arbitration agreement. Id at 9-10. The court examines these arguments in turn.

//
//
//

III

Ali contends that under 9 USC § 4, he is entitled to have a jury determine whether the arbitration agreement is valid. Ali misconstrues that provision. 9 USC § 4 provides in relevant part:

> If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. * * * Where such an issue is raised, the party alleged to be in default may * * * demand a jury trial of such issue * * * .

Although the Ninth Circuit does not appear to have addressed this issue, other courts have held that 9 USC § 4 mandates a jury trial "only if there is a triable issue concerning the existence or scope of the agreement." Saturday Evening Post Co v Rumbleseat Press, 816 F2d 1191, 1196 (7th Cir 1987) ("It is not true that by merely demanding a jury trial a party to an arbitration agreement can get one."); see also American Heritage Life Ins Co v Orr, 294 F3d 702, 710 (5th Cir 2002) (no right to jury trial when alleging that arbitration agreements are unconscionable because that issue relates to the enforceability rather than the "making" of the arbitration agreements); Dillard v Merrill Lynch, Pierce, Fenner & Smith, Inc, 961 F2d 1148, 1154 (5th Cir 1992) ("The party resisting arbitration bears 'the burden of showing that he is entitled to a jury trial under § 4 of the Arbitration Act.'" (quoting Bhatia v Johnston, 818 F2d 418, 422 (5th Cir 1987))). As described above, there is no triable issue concerning the existence or scope of the arbitration agreement. The agreement clearly applies to Ali's claims. Accordingly, 9 USC § 4 does not entitle Ali to a jury trial on these issues.

//

**IV**

Ali also argues that the arbitration agreement is unenforceable because it is unconscionable. "In determining the validity of an agreement to arbitrate, federal courts 'should apply ordinary state law principles that govern the formation of contracts.' 'Thus, generally applicable defenses, such as * * * unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA].'" <u>Ferguson v Countrywide Credit Indus</u>, 298 F3d 778, 782 (9th Cir 2002) (omission and alteration in original) (citation omitted) (first quoting <u>First Options of Chicago, Inc v Kaplan</u>, 514 US 938, 944 (1995)) (second quoting <u>Doctor's Assocs, Inc v Casarotto</u>, 517 US 681, 687 (1996)).

Under California law, for an arbitration agreement to be unenforceable under the unconscionability doctrine, the agreement must be both procedurally and substantively unconscionable. <u>Armendariz v Foundation Health Psychcare Services</u>, Inc, 24 Cal 4th 83, 114 (2000). "The procedural element of unconscionability focuses on whether the contract is one of adhesion." <u>McManus v CIBC World Markets Corp</u>, 109 Cal App 4th 76, 87 (2003). "The substantive element addresses the existence of overly harsh or one-sided terms." Id.

In this case, Ali argues that the arbitration agreement is one-sided in favor of defendants and therefore is substantively unconscionable. In particular, Ali objects to the first provision of the agreement, which states, "Any and all claims, controversies, grievances, differences, injuries or disputes arising out of or in any way related to <u>Employee's employment with the Company</u> * * * must be submitted to final and binding arbitration * * *." Arb

Agreement at ¶ 1 (emphasis added).  Ali asserts that this provision "obligates Ali to submit to arbitration where Ali has initiated the proceedings, but places White Cap under no obligation to pursue any employment-related claims it might assert against Ali in arbitration * * *."  Opp at 13.

The court disagrees with Ali's interpretation.  As defendants note, the term "Employee's employment" only specifies the types of claims the parties must arbitrate, regardless whether Ali or White Cap is the plaintiff.  Reply (Doc #41) at 12-13.  In other words, this provision creates a mutual agreement to arbitrate —— for example, if White Cap had a breach of contract claim against Ali arising out of Ali's employment, the arbitration agreement would require White Cap to arbitrate that claim.  Moreover, the California court of appeal has found that similar language requiring arbitration of "'[a]ll disputes arising out of [employee's] employment or the termination of [employee's] employment' * * * creates a mutual obligation to compel [the employer] to arbitrate any claims against the employee."  McManus, 109 Cal App 4th at 100-01.  Because the arbitration agreement is not substantively unconscionable and Ali has not challenged the agreement's validity on any other grounds, the court finds that the agreement is valid.

//
//
//
//
//
//

**7**

V

Although the arbitration agreement is valid and enforceable, Ali provides three reasons why defendants' motion to compel should nonetheless be denied. First, Ali asserts that defendants waived their arbitration rights by not complying with procedures set forth in the arbitration agreement. Opp at 8-9. Next, Ali contends that defendants waived their right to arbitration by delaying in seeking to compel arbitration. Id at 6-9. Finally, Ali asserts that because defendants Rodriguez and Fabbri were not parties to the arbitration agreement, Ali's claims against them should not be arbitrated and should remain in this court. Id at 9-10. Ali then asserts that his claims against White Cap should also remain in this court, in the interest of keeping all claims in the same forum. Id.

Before the court can evaluate Ali's arguments, the court must determine whether it has any power to confront these issues in the first place. In other words, the court must determine whether the court or an arbitrator has the power to decide these issues. The Supreme Court has held that an arbitrator should generally decide procedural and substantive issues pertaining to an arbitration agreement unless the issue involves a question of arbitrability, which the court defines as "[t]he question whether the parties have submitted a particular dispute to arbitration." Howsam v Dean Witter Reynolds, 537 US 79, 83 (2002). Put more simply, when dealing with an arbitration agreement, a court should only decide issues that parties would likely expect the court to decide —— other issues should be left to the arbitrator.

//

The court addresses the question of arbitrability for each of Ali's three arguments in turn. As will be described presently, the court determines that an arbitrator, and not the court, must evaluate whether defendants complied with the time limitations set forth in the arbitration agreement. On the other hand, the court finds that it has the power to consider the other two issues raised by Ali: whether defendants waived their right to arbitration by delaying in seeking to compel arbitration and whether Ali's claims against Rodriguez and Fabbri can be arbitrated. Accordingly, the court addresses the latter two issues but leaves the former issue for the arbitrator to decide.

A

In arguing that defendants waived their right to arbitration by not following procedural rules set forth in the arbitration agreement, Ali points to the second provision of the agreement, which states that any claims under the agreement "shall be reduced to writing and submitted to the other party within the applicable statute of limitations." Arb Agreement at ¶ 2(a). The provision goes on to state that the parties "shall meet within fifteen (15) days of any such written claim" and must elect to arbitrate "within thirty (30) days of [that meeting] or the claim is waived." Id at ¶ 2(c)-(d).

The court should not evaluate Ali's argument, which must instead be considered by an arbitrator. The Supreme Court in Howsam held that an arbitrator, and not a court, should decide whether an arbitration claim was barred by a six-year limitations period embedded in the arbitrator's rules that the parties had agreed to follow. 537 US at 85. Although the fact pattern here is

9

somewhat different —— the time limit in this case is part of the arbitration agreement rather than in the arbitrator's rules —— the reasoning behind <u>Howsam</u> still applies. Both cases involve time-limit provisions that are "the sort of procedural prerequisite that is presumed to be for the arbitrator." <u>Marie v Allied Home Mortgage Corp</u>, 402 F3d 1, 11 (1st Cir 2005). Moreover, deferring to the arbitrator time-limit provisions also accords with earlier Supreme Court precedent —— in <u>John Wiley & Sons, Inc v Livingston</u>, the Court held that an arbitrator and not the court should decide whether a party gave notice of a grievance within a four-week time period required under arbitration. 376 US 543, 556-59 (1964). And the First Circuit recently held that an arbitrator, not a court, should determine whether a party satisfied a 60-day time limit in an arbitration agreement. <u>Marie</u>, 402 F3d at 11. In particular, the <u>Marie</u> court noted:

> The arbitrator might be expected to have comparative expertise in determining the meaning of these sorts of contractual limitations provisions in light of the background norms in this employment area. And as in <u>Wiley</u>, consideration of this kind of procedural provision may entangle the court in issues that go properly to the merits of the dispute, which are for the arbitrator.

Id. Accordingly, the court defers to the arbitrator to decide whether defendants failed to comply with the procedural rules in the arbitration agreement and thereby waived their right to arbitration.

B

Ali also argues that defendants waived their right to compel arbitration by their delay in filing this motion and availing themselves of discovery. Before considering Ali's

10

1 argument, the court must again determine whether it can decide this
2 issue, or instead whether the issue should be decided by an
3 arbitrator.

4                                    1

5         Prior to Howsam, district courts, and not arbitrators,
6 had the power to determine the issue of waiver.  See Sovak v Chugai
7 Pharmaceutical Co, 280 F3d 1266, 1270 (9th Cir 2002).  But in
8 Howsam, the Supreme Court stated that "the presumption is that the
9 arbitrator should decide 'allegations of waiver, delay, or a like
10 defense to arbitrability.'"  537 US 79, 84 (2002) (quoting Moses H
11 Cone, 460 US at 24-25).  Although this language suggests that
12 arbitrators and not courts should decide the waiver issue, courts
13 have struggled with whether this language is binding or is just
14 dictum.  For example, the Eighth Circuit relied on Howsam's
15 language to find that waiver is an issue that should be decided by
16 an arbitrator.  Nat'l American Ins Co v Transamerica Occidental
17 Life Ins Co, 328 F3d 462, 466 (8th Cir 2003).  On the other hand,
18 in Marie, the First Circuit held that "Howsam and [a subsequent
19 case] Green Tree did not intend to disturb the traditional rule
20 that waiver by conduct, at least where due to litigation-related
21 activity, is presumptively an issue for the court."  402 F3d 1, 14
22 (1st Cir 2005).

23         Although the Ninth Circuit has yet to weigh in on this
24 issue, there are many reasons why waiver based on litigation-
25 related activity presumptively should be decided by the court, not
26 an arbitrator.  First, it is unclear whether the Howsam court
27 intended to change the long-standing rule that courts should
28 determine the issue of waiver.  The court noted:

                                    11

> [T]he Court has found the phrase 'question of arbitrability' not applicable in other kinds of general circumstance where parties would likely expect that an arbitrator would decide the gateway matter.  * * * [T]he presumption is that the arbitrator should decide 'allegations of waiver, delay, or a like defense to arbitrability.'  Moses H Cone Memorial Hospital, 460 US at 24-25.

537 US at 84 (emphasis in original).  But despite this passage's apparent reliance on Moses H Cone, that case never held that an arbitrator should decide issues of waiver.  Rather, Moses H Cone stated:

> The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

Moses H Cone, 460 US at 24-25.  This passage indicates that a decisionmaker should resolve doubts regarding an allegation of waiver in favor of arbitration.  But the passage does not state whether the decisionmaker should be the court or the arbitrator.  In other words, despite the Howsam court's apparent reliance on Moses H Cone, that case does not address the question of arbitrability regarding issues of waiver.

Additionally, when discussing the issue of waiver, the Howsam court relied on the Revised Uniform Arbitration Act of 2000 ("RUAA") for the proposition that an "arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled." RUAA § 6(c) (Supp 2002) (quoted in Howsam, 537 US at 85).  But the RUAA also includes a comment noting that "[w]aiver is one area where courts, rather than arbitrators, often make the decision as to enforceability of an arbitration clause."  RUAA § 6, cmt 5 (Supp

12

1  2004) (quoted in Marie, 402 F3d at 13).  This further suggests that
2  the Howsam court's reference to waiver might have been accidental,
3  or at least not intended to binding.
4         Moreover, there are compelling policy reasons supporting
5  the traditional rule that waiver by conduct is an issue for courts
6  to decide.  Judges have a comparative advantage in recognizing
7  abusive forum shopping, and "[w]here the alleged waiver arises out
8  of conduct within the very same litigation in which the party
9  attempts to compel arbitration or stay proceedings, then the
10 district court has power to control the course of proceedings
11 before it and to correct abuses of those proceedings."  Marie, 402
12 F3d at 13.  Moreover, litigation-related waivers heavily implicate
13 "judicial procedures" that are unlikely to be intertwined with the
14 merits of the dispute.  Id.  Additionally, "allowing courts to
15 decide waiver issues —— at least when due to litigation-related
16 activity —— furthers a key purpose of the FAA: to permit speedy
17 resolution of disputes."  Id at 14.  Accordingly, the court
18 concludes that this type of litigation-related waiver is an issue
19 for the court to determine.

20                                 2

21        To show that defendants waived their right to compel
22 arbitration, Ali must demonstrate that:  (1) defendants "had
23 knowledge of [their] existing right to compel arbitration; (2)
24 [defendants] acted inconsistently with that existing right; and (3)
25 [plaintiffs] suffered prejudice from [defendants'] delay in moving
26 to compel arbitration."  Sovak v Chugai Pharmaceutical Co, 280 F3d
27 1266, 1270 (9th Cir 2002).  Ali "bears 'a heavy burden of proof' in
28 showing these elements."  Id (quoting Britton v Co-op Banking

13

1  Group, 916 F2d 1405, 1412 (9th Cir 1990)).  "Any examination of
2  whether the right to compel arbitration has been waived must be
3  conducted in light of the strong federal policy favoring
4  enforcement of arbitration agreements."  Fisher v A G Becker
5  Paribas Incorporation, 791 F2d 691, 694 (9th Cir 1986).
6           Here, Ali asserts that defendants cannot compel
7  arbitration because they filed the present motion more than 11
8  months after the complaint was filed and 15 months after defendants
9  learned that Ali would file suit.  Opp at 6.  Moreover, Ali
10 contends that defendants acted inconsistently with their
11 arbitration rights by substantially litigating their case in this
12 court.  In particular, Ali states that defendants took multiple
13 depositions, produced and requested thousands of documents,
14 participated in a mediation session and resolved claims under FRCP
15 68.  Id at 6-7.
16          The court does not find these arguments persuasive.  The
17 effect of delay in this case is somewhat mitigated because
18 defendants' current counsel only took over this case in July 2005
19 and filed the present motion the following month.  More
20 significantly, most of defendants' discovery was performed after
21 they had demanded arbitration.  Prior to that date, defendants had
22 not taken a single deposition nor filed any motions in this case.
23 Defendants' discovery had consisted only of document requests.
24 Reply at 3-4; Chammas Decl (Doc #31) at 2.  Moreover, the court
25 cannot fault defendants for seeking discovery after filing the
26 present motion because they faced a discovery cutoff date of
27 September 30, 2005.  Cf Maxum Foundations, Inc v Salus Corp, 779
28 F2d 974, 982 (4th Cir 1985) ("We decline to create a rule that

**14**

would require a party seeking arbitration to avoid a finding of default by ignoring court-ordered discovery deadlines and assuming the risk that its motion under the Federal Arbitration Act will be unsuccessful."). In any case, because the arbitration agreement allowed for discovery, Arb Agreement at ¶ 4, Ali cannot claim that he suffered prejudice because he has not shown that defendants "availed [themselves] of discovery procedures unavailable in arbitration, or gained a strategic advantage through [their] discovery requests." Patten Grading & Paving Inc v Skanska USA Building Inc, 380 F3d 200, 207 (4th Cir 2004).

More generally, Ali has not shown that he suffers any prejudice, other than delay, because of defendants' motion to compel. Although Ali suggests that his litigation strategy might have changed had he known that this case would be arbitrated, he never specifies how arbitration would prejudice him. And in many cases, courts have granted motions to compel arbitration even if the moving party has delayed longer than defendants have here. See, e g, Britton, 916 F2d at 1412-13 (no waiver where motion to compel arbitration was brought more than a year after complaint was filed). Accordingly, the court rejects the argument that defendants waived their right to compel arbitration by delaying in filing this motion.

C

Finally, Ali asserts that because defendants Rodriguez and Fabbri were not parties to the arbitration agreement, Ali's claims against them should not be arbitrated and should remain in this court. Once again, the court must examine whether it should evaluate this claim or whether an arbitrator must instead do so.

15

1  More specifically, given an arbitration agreement between an
2  employer and an employee, the issue is whether the court or an
3  arbitrator should decide whether non-signatory supervisors
4  (Rodriguez and Fabbri) can enforce the arbitration agreement
5  against the employee (Ali).
6        Although the Ninth Circuit apparently has not confronted
7  this issue post-Howsam, other courts have decided that they, rather
8  than an arbitrator, should decide whether a non-signatory can
9  enforce an arbitration agreement.  Gaming World Intl v White Earth
10 Band of Chippewa Indians, 317 F3d 840, 852 (8th Cir 2003) ("Whether
11 a nonsigning party or a successor corporation is bound by an
12 arbitration agreement or whether a 'particular type of controversy'
13 is covered by an 'arbitration clause in a concededly binding
14 contract' are examples of issues to be decided by the court."
15 (quoting Howsam, 537 US at 84)); In re Currency Conversion Fee
16 Antitrust Litigation, 265 F Supp 2d 385, 401-03 (SDNY 2003)
17 (holding that non-signatory defendants to an arbitration clause
18 could compel arbitration with signatory plaintiffs).  Moreover,
19 determining whether non-signatory supervisors can enforce
20 arbitration agreements involves issues of agency law that implicate
21 "the kind of narrow circumstance where contracting parties would
22 likely have expected a court to have decided the gateway matter."
23 Howsam, 537 US at 84.  And in any event, there is no reason to
24 think that Howsam reversed the courts' long-standing practice of
25 deciding this question of arbitrability.  See, e g, Letizia v
26 Prudential Bache Securities, Inc, 802 F2d 1185, 1187-88 (9th Cir
27 1986).  Accordingly, this court must determine whether Rodriguez
28 and Fabbri can enforce the arbitration agreement against Ali.

16

Turning to the merits, the court finds that arbitration is proper for Ali's claims against Rodriguez and Fabbri. Noting the consensus among other circuits, the Ninth Circuit has found that "nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." Id at 1187. In particular, the court held that non-signatory defendants, who were employees of a signatory defendant, could compel arbitration against a signatory plaintiff. Id at 1187-88. Because Rodriguez and Fabbri are agents of White Cap and their allegedly unlawful actions relate to Ali's employment, Rodriguez and Fabbri are entitled to compel arbitration on Ali's claims.

## VI

Accordingly, because the arbitration agreement is enforceable and covers Ali's claims, and defendants can arbitrate Ali's claims under the agreement, the court GRANTS defendants' motion to compel arbitration and their request for a stay. Additionally, the parties are instructed to submit not later than April 25, 2006, a report in writing on the status of the arbitration proceedings.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge